UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

NICOLE P.,[1]

                     Plaintiff,

        v.

COMMISSIONER OF SOCIAL SECURITY,

                     Defendant.

_____

<u>DECISION & ORDER</u>

20-CV-6576MWP


**<u>PRELIMINARY STATEMENT</u>**

      Plaintiff Nicole P. ("plaintiff") brings this action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner") denying her application for Supplemental Security Income ("SSI"). Pursuant to the Standing Order of the United States District Court for the Western District of New York regarding Social Security cases dated June 29, 2018, this case has been reassigned to, and the parties have consented to the disposition of this case by, the undersigned. (*See* Docket Entry dated April 6, 2022).

      Currently before the Court are the parties' motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Docket ## 17, 20). For the reasons set forth below, this Court finds that the decision of the Commissioner is supported by substantial evidence in the record and is in accordance with applicable legal standards.

---

[1] Pursuant to the November 18, 2020 Standing Order of the United States District Court for the Western District of New York regarding identification of non-governmental parties in social security opinions, the plaintiff in this matter will be identified and referenced solely by first name and last initial.

Accordingly, the Commissioner's motion for judgment on the pleadings is granted, and

plaintiff's motion for judgment on the pleadings is denied.

## DISCUSSION

I. **Standard of Review**

This Court's scope of review is limited to whether the Commissioner's

determination is supported by substantial evidence in the record and whether the Commissioner

applied the correct legal standards. *See Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004)

("[i]n reviewing a final decision of the Commissioner, a district court must determine whether

the correct legal standards were applied and whether substantial evidence supports the

decision"), *reh'g granted in part and denied in part*, 416 F.3d 101 (2d Cir. 2005); *see also*

*Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) ("it is not our function to determine *de novo*

whether plaintiff is disabled[;] . . . [r]ather, we must determine whether the Commissioner's

conclusions are supported by substantial evidence in the record as a whole or are based on an

erroneous legal standard") (internal citation and quotation omitted). Pursuant to 42 U.S.C.

§ 405(g), a district court reviewing the Commissioner's determination to deny disability benefits

is directed to accept the Commissioner's findings of fact unless they are not supported by

"substantial evidence." *See* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner . . . as to

any fact, if supported by substantial evidence, shall be conclusive"). Substantial evidence is

defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401

(1971) (internal quotation omitted).

To determine whether substantial evidence exists in the record, the court must consider the record as a whole, examining the evidence submitted by both sides, "because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). To the extent they are supported by substantial evidence, the Commissioner's findings of fact must be sustained "even where substantial evidence may support the claimant's position and despite the fact that the [c]ourt, had it heard the evidence *de novo*, might have found otherwise." *Matejka v. Barnhart*, 386 F. Supp. 2d 198, 204 (W.D.N.Y. 2005) (citing *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982), *cert. denied*, 459 U.S. 1212 (1983)).

A person is disabled for the purposes of SSI and disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A). In assessing whether a claimant is disabled, the ALJ must employ a five-step sequential analysis. *See Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982) (*per curiam*). The five steps are:

> (1)    whether the claimant is currently engaged in substantial gainful activity;
>
> (2)    if not, whether the claimant has any "severe impairment" that "significantly limits [the claimant's] physical or mental ability to do basic work activities";
>
> (3)    if so, whether any of the claimant's severe impairments meets or equals one of the impairments listed in Appendix 1 of Subpart P of Part 404 of the relevant regulations (the "Listings");

      (4)     if not, whether despite the claimant's severe impairments, the claimant retains the residual functional capacity [("RFC")] to perform [his/her] past work; and

      (5)     if not, whether the claimant retains the [RFC] to perform any other work that exists in significant numbers in the national economy.

20 C.F.R. §§ 404.1520(a)(4)(i)-(v) & 416.920(a)(4)(i)-(v); *Berry v. Schweiker*, 675 F.2d at 467. "The claimant bears the burden of proving his or her case at steps one through four[;] . . . [a]t step five the burden shifts to the Commissioner to 'show there is other gainful work in the national economy [which] the claimant could perform.'" *Butts v. Barnhart*, 388 F.3d at 383 (quoting *Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998)).

## II.    <u>Procedural History</u>

      Plaintiff initially filed her claim for SSI on June 13, 2012, alleging disability beginning on December 30, 2009 based on anxiety, agoraphobia, depression, scoliosis, and problems in both knees. (Tr. 109-21).[2] An ALJ found her to be not disabled on November 1, 2013. (Tr. 126-39). Upon review, the Appeals Council vacated and remanded that decision on March 10, 2015, finding, among other things, that the ALJ failed to explain the weight assigned to the August 29, 2012 opinion of consultative examiner Harbinder Toor ("Toor"), MD, regarding plaintiff's physical limitations. (Tr. 140-43).

      On remand, an ALJ again found plaintiff to be not disabled (Tr. 17-39), a decision which the Appeals Council affirmed on May 30, 2017 (Tr. 1-6). That decision, however, was vacated and remanded for further administrative proceedings by United States Magistrate Judge

---

[2] The administrative transcript (Docket ## 13, 14) shall be referred to as "Tr. ___," and references thereto utilize the internal Bates-stamped pagination assigned by the parties.

Jonathan Feldman on July 24, 2018. (Tr. 538-48). Judge Feldman's Decision and Order focused on the mental health aspects of plaintiff's claim and determined that the ALJ erroneously evaluated the opinion of plaintiff's treating therapist Jana Wachsler-Felder ("Wachsler-Felder"), PhD, and failed to develop the record regarding Wachsler-Felder's treatment notes. (*Id.*).

On subsequent remand, the Commissioner denied plaintiff's SSI claim on April 8, 2020. (Tr. 501-21). On August 6, 2020, plaintiff commenced this lawsuit relating to the Commissioner's most recent denial of her claim. (Docket # 1).

### III.   **The ALJ's Decision**

In his decision, the ALJ followed the required five-step analysis for evaluating disability claims. Under step one of the process, the ALJ found that plaintiff had not engaged in substantial gainful activity since June 13, 2012, the application date. (Tr. 504). At step two, the ALJ concluded that plaintiff had the severe impairments of affective disorder, anxiety disorder, borderline personality disorder, and posttraumatic stress disorder ("PTSD"). (*Id.*). The ALJ also concluded that plaintiff had numerous other impairments but that those impairments were nonsevere. (*Id.*). In addition, the ALJ found that plaintiff's fibromyalgia was not a medically determinable impairment because "the medical documentation of record d[id] not meet the requirements of Social Security Regulation 12-2p." (*Id.* (referencing Soc. Sec. Ruling 12-2p, 2012 WL 3104869 (2012))). At step three, the ALJ determined that plaintiff did not have an impairment (or combination of impairments) that met or medically equaled one of the listed impairments in the Listings. (*Id.*).

The ALJ concluded that plaintiff retained the RFC to perform a full range of work at all exertional levels but with certain nonexertional limitations. (Tr. 507). Specifically, the

ALJ limited plaintiff to simple, routine, and repetitive tasks but not at a fast pace, such as work on a moving assembly line, as well as to only occasional changes in the work setting.  (*Id.*).  At step four, the ALJ found that plaintiff had no past relevant work.  (Tr. 512).  At step five, the ALJ determined that other jobs existed in significant numbers in the national economy that, based on her age, education, work experience, and RFC, plaintiff could perform, such as mail clerk, housekeeping cleaner, and shipping and receiving clerk.  (Tr. 512-13).  The ALJ also found in the alternative that, based on the vocational expert's testimony, plaintiff could perform those same jobs "even if [she] were determined to have severe physical impairments and [were] *additionally* limited to light work with occasional climbing of ropes, scaffolds or ladders[,] occasional climbing of ramps or stairs[,] occasional stooping, crouching, balancing, kneeling or crawling[,] frequent reaching, handling and fingering[,] and frequent pushing and pulling with the lower extremities."  (Tr. 513 (emphasis in original)).  Accordingly, the ALJ found that plaintiff was not disabled.  (Tr. 513-14).

## IV.     Plaintiff's Contentions

          Plaintiff contends that the ALJ's determination that she is not disabled is not supported by substantial evidence and is the product of legal error.  (Docket ## 17-1, 21).  First, plaintiff maintains that the ALJ erroneously found that her fibromyalgia was not a medically determinable impairment at step two.  (Docket ## 17-1 at 22-28; 21 at 1-2).  Second, plaintiff argues that the ALJ's consideration of the May 31, 2019 opinion of plaintiff's primary care physician Todd Bingemann ("Bingemann"), MD, ran afoul of the treating physician rule. (Docket ## 17-1 at 28-33; 21 at 2-3).

V.      **Analysis**

    A.      **The ALJ's Step-Two Determination Regarding Fibromyalgia**

        I turn first to plaintiff's argument that the ALJ erred in finding that fibromyalgia was not a medically determinable impairment at step two of the sequential analysis. (Docket ## 17-1 at 22-28; 21 at 1-2). Specifically, plaintiff contends that although the ALJ referenced the appropriate rule when evaluating fibromyalgia at this step, the ALJ "did not correctly apply it." (Docket # 17-1 at 22). In plaintiff's view, the record sufficiently supports the conclusion that her fibromyalgia qualified as a medically determinable impairment according to the guidance set forth in Social Security Ruling ("SSR") 12-2p and resulted in functional limitations that should have been accounted for in the ALJ's RFC assessment. (*Id.* at 22-28). Plaintiff argues that the ALJ's finding to the contrary is not supported by substantial evidence. (*Id.* at 27-28). The Commissioner counters that plaintiff failed to meet her step-two burden with respect to fibromyalgia and that the ALJ's finding that plaintiff's fibromyalgia was not a medically determinable impairment was supported by substantial evidence. (Docket # 20-1 at 11-16). For the reasons discussed below, I agree with the Commissioner.

        Disability may be found only if a claimant has a medically determinable impairment. *See* 20 C.F.R. § 416.905(a) ("[t]he law defines disability as the inability to do any substantial gainful activity *by reason of* any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months") (emphasis supplied). Such an impairment must "result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 416.921. Therefore, "a physical or mental impairment must be established by objective

7

medical evidence from an acceptable medical source" and not simply from a claimant's "statement of symptoms, a diagnosis, or a medical opinion." *Id.* Only after it is established that a claimant has a medically determinable impairment does the Commissioner "determine whether [the claimant's] impairment(s) is severe" at step two of the sequential analysis. *Id.*; *see also Talbot v. Colvin*, 2015 WL 5512039, *4 (N.D.N.Y. 2015) ("[o]nly medically determinable impairments may be considered severe or non-severe" at step two) (citing 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii)).

SSR 12-2p "provides guidance on how [the Commissioner] develop[s] evidence to establish that a person has a medically determinable impairment of fibromyalgia." Soc. Sec. Ruling 12-2p, 2012 WL 3104869 at *1. As that ruling notes, fibromyalgia "is a complex medical condition characterized primarily by widespread pain in the joints, muscles, tendons, or nearby soft tissues that has persisted for at least [three] months," and a claimant "can establish that he or she has a[] [medically determinable impairment] of [fibromyalgia] by providing evidence from an acceptable medical source," *i.e.*, "[a] licensed physician (a medical or osteopathic doctor)." *Id.* at *2. In general, the Commissioner "cannot rely upon the physician's diagnosis alone" in determining whether fibromyalgia is a medically determinable impairment, and "[t]he evidence must document that the physician reviewed the person's medical history and conducted a physical exam." *Id.* The Commissioner will "review the physician's treatment notes to see if they are consistent with the diagnosis of [fibromyalgia], determine whether the person's symptoms have improved, worsened, or remained stable over time, and establish the physician's assessment over time of the person's physical strength and functional abilities." *Id.*

SSR 12-2p also identifies "specific criteria" to be considered in evaluating whether a claimant's alleged fibromyalgia is a medically determinable impairment. *Id.*

"[S]pecifically, a physician must diagnose fibromyalgia, the diagnosis cannot be inconsistent

with the other evidence in the case record, and the physician must provide evidence of: (1) a

history of widespread pain, at least eleven positive tender points on physical examination, and

evidence that other disorders that could cause the symptoms or signs were excluded; or (2) a

history of widespread pain, repeated manifestations of six or more fibromyalgia symptoms,

signs, or co-occurring conditions, and evidence that other disorders that could cause these

repeated manifestations were excluded." *Cooper v. Comm'r of Soc. Sec.*, 2019 WL 1109573, *4

(W.D.N.Y. 2019) (citing Soc. Sec. Ruling 12-2p, 2012 WL 3104869 at *2-3).  The first set of

criteria is based on the 1990 American College of Rheumatology ("ACR") Criteria for the

Classification of Fibromyalgia (the "1990 ACR Criteria").  Soc. Sec. Ruling 12-2p, 2012 WL

3104869 at *2-3.  The second is based on the 2010 ACR Preliminary Diagnostic Criteria (the

"2010 ACR Criteria").  *Id.* at *3.[3]

    Here, after concluding that plaintiff had several severe and nonsevere

impairments at step two, the ALJ determined that plaintiff's fibromyalgia was "not a medically

determinable impairment."  (Tr. 504).  In doing so, the ALJ first acknowledged that fibromyalgia

was noted among the diagnoses assessed by Dr. Bingemann.  (*Id.* (citing Tr. 1158)).  The ALJ

observed, however, that the "medical record d[id] not contain any formal rheumatologic

diagnosis of fibromyalgia, evidence of a history of widespread pain, at least 11 positive tender

points over all quadrants of the body [citing Tr. 440, 953], six or more co-occurring fibromyalgia

---

[3]  The "history of widespread pain" referenced in both the 1990 ACR Criteria and 2010 ACR Criteria is defined as "pain in all quadrants of the body (the right and left sides of the body, both above and below the waist) and axial skeletal pain (the cervical spine, anterior chest, thoracic spine, or low back) – that has persisted (or that persisted) for at least [three] months[;] [t]he pain may fluctuate in intensity and may not always be present."  Soc. Sec. Ruling 12-2p, 2012 WL 3104869 at *2-3.  In addition, the fibromyalgia "symptoms, signs, or co-occurring conditions" referenced in the 2010 ACR Criteria include "fatigue, cognitive or memory problems ('fibro fog'), waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome," among many others.  *Id.* at *3 (footnote omitted); *see also id.* at *3 nn.9, 10, 11.

symptoms, or evidence ruling out other underlying conditions [citing Tr. 1077, 1311]."

(Tr. 504).  The ALJ thus concluded that "the medical documentation of record d[id] not meet the

requirements of [SSR] 12-2p, and as such, . . . fibromyalgia [did not] constitute a medically

determinable impairment for the purposes of this decision."  (*Id.*).

        As noted above, plaintiff maintains that this determination is not supported by

substantial evidence.  (Docket ## 17-1 at 22-28; 21 at 1-2).  Specifically, plaintiff asserts that she

has been diagnosed with fibromyalgia (albeit not by a rheumatologist) and the record evidence

sufficiently demonstrates that she meets the 2010 ACR Criteria outlined in SSR 12-2p.  (Docket

# 17-1 at 24).[4]  In my view, substantial evidence does support the ALJ's finding at step two that

plaintiff's fibromyalgia was not a medically determinable impairment, although it is concededly

a close question.  *See Schillo v. Kijakazi*, 31 F.4th 64, 69 (2d Cir. 2022) ("[courts] may vacate

[an ALJ's] disability determination only if it is based on legal error or unsupported by

'substantial evidence' – that is, if no reasonable factfinder could have reached the same

conclusion as the ALJ"); *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012)

("[t]he substantial evidence standard means once an ALJ finds facts, [reviewing courts] can

reject those facts only if a reasonable factfinder would *have to conclude otherwise*") (emphasis in

original) (quotations omitted).

        I agree with plaintiff that the ALJ improperly imposed a heightened burden as to

acceptable diagnosticians of fibromyalgia under SSR 12-2p.  (*See* Docket # 17-1 at 24).

Specifically, the ALJ supported his step-two finding by, among other things, observing that the

---

[4]  Plaintiff does not contend that the medical record supports a finding that her fibromyalgia constituted a medically determinable impairment under the 1990 ACR Criteria.  (*See* Docket # 17-1 at 23 n.3 (stating that the 1990 ACR Criteria "is inapplicable, as [p]laintiff never received a tender point examination"); *id.* at 25 (noting that plaintiff had "no tender points")).  Although this Court's review of the record reveals that plaintiff did exhibit some tender points (*see, e.g.*, Tr. 440, 1301), this Court confines its analysis to the challenge plaintiff articulates – whether the ALJ correctly applied the 2010 ACR Criteria.

record "does not contain any *formal rheumatologic diagnosis* of fibromyalgia."  (Tr. 504 (emphasis supplied)).  SSR 12-2p, however, does not require a rheumatologist's diagnosis; instead, it requires a diagnosis by a "licensed physician," defined as a "medical or osteopathic doctor."  Soc. Sec. Ruling 12-2p, 2012 WL 3104869 at *2.  Accordingly, the fact that Dr. Bingemann – a medical doctor – diagnosed plaintiff with fibromyalgia suffices for purposes of SSR 12-2p.  *See id.*

That does not end the analysis, however, because an ALJ may not "rely upon [a] physician's diagnosis alone" in determining whether a plaintiff's fibromyalgia constitutes a medically determinable impairment.  *Id.*; *see also House v. Comm'r of Soc. Sec.*, 2016 WL 4275732, *8 (N.D.N.Y. 2016) ("the determination that [plaintiff's] fibromyalgia was not medically determinable is dependent upon the medical evidence required by SSR 12-2p, not just on the diagnoses of her treating physicians[;] [s]ince [plaintiff] failed to provide evidence demonstrating the SSR's required criteria, and because the evidence provided by [consultative examiner] negates them, . . . a diagnosis alone cannot support a finding that [plaintiff's] fibromyalgia is medically determinable").  Here, the record did not establish that plaintiff met the 2010 ACR Criteria.

In reaching this determination, the ALJ erred in finding that the record did not contain evidence of plaintiff's history of widespread pain or co-occurring fibromyalgia symptoms.  (Tr. 504).  As plaintiff points out (*see* Docket # 17-1 at 25), she did indeed complain of body pain over the course of many years.  (*See*, *e.g.*, Tr. 405, 416, 379, 439, 953, 1157, 1301-306, 1397).  Moreover, the record contains at least some evidence tending to show that plaintiff experienced certain of the "symptoms, signs, or co-occurring conditions" identified in SSR 12-2p, such as fatigue (*see*, *e.g.*, Tr. 375, 1310, 950, 1397), anxiety (*see* Tr. 504), depression

(*see*, *e.g.*, Tr. 358, 747, 1246, 1421), headaches (*see*, *e.g.*, Tr. 1350, 1454, 1397), and memory and cognitive problems (*see*, *e.g.*, Tr. 377, 949, 1366-67).

This error notwithstanding, the ALJ correctly determined that the record did not contain evidence that other disorders that could have been the cause of plaintiff's symptoms were excluded (*see* Tr. 504) – the third requirement of the 2010 ACR Criteria.  In this respect, the ALJ cited an April 25, 2016 treatment note completed by nurse practitioner Gloria Fluellen observing that not all of plaintiff's symptoms, including hip, tail bone, and sciatic nerve pain, were consistent with fibromyalgia (Tr. 1077), as well as a January 19, 2016 treatment note from Anna Pfahl, MD, indicating that, although plaintiff reported a history of fibromyalgia, her chart contained "no documentation" of that history (Tr. 1311).

In maintaining that "there was evidence that other disorders which could cause [the above-detailed] symptoms were excluded," plaintiff points to diagnostic imaging conducted of her shoulder, cervical spine, hand, chest, and head, all of which were apparently normal. (Docket # 17-1 at 27).  As the Commissioner counters (*see* Docket # 20-1 at 14), none of the cited imaging was conducted in relation to plaintiff's fibromyalgia, and some of the imaging results confirmed other causes for plaintiff's reported pain.  For example, following a hand x-ray in June 2012, plaintiff was diagnosed with a "[h]and sprain and strain."  (Tr. 414-15).  In addition, following x-rays taken of her cervical spine and left shoulder in early July 2012, plaintiff was diagnosed with a "[m]uscle strain [in her] left shoulder (neck)" (Tr. 373), and Dr. Stephen Schultz, MD, diagnosed her with patellofemoral pain syndrome and arthritis in her left shoulder later in July 2012 (Tr. 416-17).  Similarly, neither the chest x-ray nor the CT scan of plaintiff's head in November 2017 related to fibromyalgia; the chest x-ray was conducted because of "[upper respiratory infection] symptoms" (Tr. 1177), and the CT scan was performed

following a "fall" and "head injury" (Tr. 1179).  In short, none of this evidence (which is the only evidence relied upon by plaintiff) supports plaintiff's assertion that other disorders that *could have caused* her fibromyalgia symptoms were excluded as is necessary to satisfy the 2010 ACR Criteria.

On this record, I find that the ALJ's conclusion that plaintiff's fibromyalgia did not constitute a medically determinable impairment is supported by substantial evidence.  Even accepting that the ALJ erred by rejecting a diagnosis of the impairment by a non-rheumatologist, he did not err by concluding that the record lacks evidence of the exclusion of other conditions as possible causes of plaintiff's symptoms, which is a requirement under SSR 12-2p.  Accordingly, remand is not warranted on this basis.  *See*, *e.g.*, *Bonazelli v. Saul*, 2021 WL 791176, *5 (D. Conn. 2021) (ALJ did not err in finding that plaintiff's alleged fibromyalgia was not a medically determinable impairment at step two where, despite plaintiff having received a past diagnosis of fibromyalgia, recent appointments revealed that plaintiff's doctor "expressed doubt that [plaintiff] had fibromyalgia, finding that her symptoms were more suggestive of a somatization disorder or a somatic symptom disorder," and the doctor did not note on examination that plaintiff had tender points or six or more fibromyalgia symptoms); *Oliveri v. Saul*, 2020 WL 5494733, *6 (D.N.J. 2020) ("[h]ere, the ALJ concluded that the evidence failed to establish that [p]laintiff's diagnosed fibromyalgia is a medically determinable impairment[;] . . . the ALJ specifically found, *inter alia*, that there was no indication of an effort to rule out other possible causes for the claimant's complaints[;] . . . [n]otably, [p]laintiff does not cite to any evidence that any physician excluded other conditions that could cause [p]laintiff's symptoms[;] . . . [b]ased on this record, substantial evidence supports the ALJ's conclusion at step two of the sequential evaluation that [p]laintiff's fibromyalgia is not a medically

determinable impairment"); *Tina D. v. Comm'r of Soc. Sec.*, 2019 WL 5190876, *6 (W.D. Wash.

2019) (no error where ALJ found that plaintiff's diagnosed fibromyalgia was not a medically

determinable impairment at step two; "[p]laintiff points to diagnoses of fibromyalgia, but fails to

address the problem [the ALJ] noted: [t]he absence of evidence that [p]laintiff's providers ruled

out other possible conditions prior to diagnosing fibromyalgia[;] . . . [a]ll [p]laintiff has done is

argue that her providers diagnosed her with fibromyalgia[;] . . . [s]he has not pointed to any

evidence showing that these providers ruled out other disorders that could cause her symptoms[;]

[p]laintiff has consequently failed to show that [the ALJ] harmfully erred at step two in finding

that fibromyalgia was not a severe impairment"), *aff'd*, 844 F. App'x 966 (9th Cir. 2021); *Brown*

*v. Berryhill*, 2018 WL 3996426, *3 (W.D.N.Y. 2018) (ALJ properly discounted examining pain

specialist's diagnosis of fibromyalgia in finding that impairment was not medically determinable

at step two, where pain specialist "simultaneously diagnosed [p]laintiff with [both fibromyalgia

and] osteoarthritis, rather than eliminating [osteoarthritis] as the cause of [p]laintiff's pain[;] . . .

[i]n both sets of criteria [detailed in SSR 12-2p], SSA requires that a claimant present evidence

that other disorders which could cause the symptoms associated with fibromyalgia have already

been excluded"); *Haruch v. Berryhill*, 2018 WL 3785406, *3-4 (E.D. Pa. 2018) (affirming ALJ's

determination that plaintiff's alleged fibromyalgia was not a medically determinable impairment

at step two because, *inter alia*, "[p]laintiff presented no evidence to preclude the possibility that

her symptoms were caused by another disorder[;] . . . both [the 1990 ACR Criteria and the 2010

ACR Criteria] require a plaintiff to provide evidence that rules out any other cause for the pain[;]

[i]n this case, [p]laintiff simply failed to do so"); *Perkins v. Comm'r of Soc. Sec.*, 2014 WL

619393, *8 (S.D. Ohio) (no error where ALJ discounted treating physician's diagnosis of

fibromyalgia and found that impairment to be not medically determinable at step two; "[treating

physician's] fibromyalgia diagnoses appear to exist in a vacuum[;] [t]here is no evidence that he engaged in any testing whatsoever in formulating his diagnosis, let alone testing specific focal points for tenderness[;] [n]or does it appear that [treating physician] attempted to rule out other conditions through other objective or clinical testing[;] [r]ather, [treating physician] seems to have labeled plaintiff's subjective allegations of pain as 'fibromyalgia' for lack of a better term[;] [p]laintiff's subjective reports alone are insufficient to support this diagnosis"), *report and recommendation adopted by*, 2014 WL 1872119 (S.D. Ohio 2014).

**B.    The ALJ's Consideration of Dr. Bingemann's Opinion**

I turn next to plaintiff's contention that the ALJ's evaluation of Dr. Bingemann's opinion contravened the treating physician rule.  The gist of plaintiff's argument is that the ALJ failed to explicitly consider the appropriate factors of the treating physician rule in weighing Dr. Bingemann's opinion and that he did not provide sufficiently "good reasons" in deciding to afford it less than controlling weight.  (Docket ## 17-1 at 28-33; 21 at 2-3).  For the following reasons, I find that remand is not warranted on this basis.

An individual's RFC is her "maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis."  *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting Soc. Sec. Ruling 96–8p, 1996 WL 374184, *2 (1996)). When making an RFC assessment, the ALJ should consider "a claimant's physical abilities, mental abilities, symptomology, including pain and other limitations which could interfere with work activities on a regular and continuing basis."  *Pardee v. Astrue*, 631 F. Supp. 2d 200, 221 (N.D.N.Y. 2009) (citing 20 C.F.R. § 404.1545(a)).  "To determine RFC, the ALJ must consider all the relevant evidence, including medical opinions and facts, physical and mental abilities, non-severe impairments, and [p]laintiff's subjective evidence of symptoms."  *Stanton v. Astrue*,

2009 WL 1940539, *9 (N.D.N.Y. 2009) (citing 20 C.F.R. §§ 404.1545(b)-(e)), *aff'd*, 370 F. App'x 231 (2d Cir. 2010).

An ALJ should consider "all medical opinions received regarding the claimant." *See Spielberg v. Barnhart*, 367 F. Supp. 2d 276, 281 (E.D.N.Y. 2005) (citing 20 C.F.R. § 404.1527(d)[5]).  Generally, a treating physician's opinion is entitled to "controlling weight" when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record."  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see also Schillo v. Kijakazi*, 31 F.4th at 75 ("[t]he opinion of a claimant's treating physician as to the nature and severity of the impairment is given controlling weight so long as it is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with (or contradicted by) other substantial evidence in the claimant's case record"); *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019).  Thus, "[t]he opinion of a treating physician is generally given greater weight than that of a consulting physician[] because the treating physician has observed the patient over a longer period of time and is able to give a more detailed picture of the claimant's medical history."  *Salisbury v. Astrue*, 2008 WL 5110992, *4 (W.D.N.Y. 2008).

"An ALJ who refuses to accord controlling weight to the medical opinion of a treating physician must consider various 'factors' to determine how much weight to give to the opinion."  *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004).  The ALJ must explicitly consider the "*Burgess* factors":

> (1)   the frequency of examination and length, nature, and extent
>         of the treatment relationship,

---

[5]  This regulation applies to claims like plaintiff's that were filed before March 27, 2017.  (*See* Tr. 109-21 (plaintiff's claim for SSI was originally filed on June 13, 2012)).  For claims filed on or after March 27, 2017, the rules in 20 C.F.R. § 404.1520c apply.

(2)    the amount of medical evidence supporting the opinion,

(3)    the consistency of the opinion with the record as a whole,

(4)    whether the opinion is from a specialist, and

(5)    whatever other factors tend to support or contradict the opinion.

*Gunter v. Comm'r of Soc. Sec.*, 361 F. App'x 197, 199 (2d Cir. 2010) (summary order); *see also Estrella v. Berryhill*, 925 F.3d at 95-96 ("[f]irst, the ALJ must decide whether the opinion is entitled to controlling weight[;] . . . if the ALJ decides the opinion is not entitled to controlling weight, it must determine how much weight, if any, to give it[;] [i]n doing so, it must 'explicitly consider' the . . . nonexclusive '*Burgess* factors'").   "At both steps, the regulations require the ALJ to give 'good reasons' – i.e., reasons supported by substantial evidence in the record – for the weight she affords the treating source's medical opinion."  *Schillo*, 31 F.4th at 75; *see also Estrella*, 925 F.3d at 96 (same) (quoting *Halloran v. Barnhart*, 362 F.3d at 32); *Burgess v. Astrue*, 537 F.3d 117, 129-30 (2d Cir. 2008) ("[a]fter considering the above factors, the ALJ must comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion[;] . . . [f]ailure to provide such 'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand") (citations and quotations omitted); *Wilson v. Colvin*, 213 F. Supp. 3d 478, 482-83 (W.D.N.Y. 2016) ("an ALJ's failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight given denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based on the record") (alterations, citations and quotations omitted).   "This requirement allows courts to properly review ALJs' decisions and provides information to claimants regarding the disposition of their cases, especially when the dispositions are unfavorable."  *Ashley v. Comm'r of Soc. Sec.*, 2014 WL

7409594, *1 (N.D.N.Y. 2014) (citing *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999)).  While an "ALJ's failure to 'explicitly' apply the *Burgess* factors when assigning weight" to a treating source's opinion is a "procedural error," if a "searching review of the record" nonetheless assures the court that "the substance of the treating physician rule was not traversed, [the court] will affirm" the ALJ's decision.  *See Estrella*, 925 F.3d at 96 (quotations omitted).

Dr. Bingemann, plaintiff's primary care physician, began treating plaintiff on March 29, 2017, and, on May 31, 2019, he completed a "Treating Medical Source Statement (Physical and Mental)."  (Tr. 1301-306).  Dr. Bingemann indicated that he had seen plaintiff three to four times per year since March 2017 and noted that plaintiff carried diagnoses of PTSD, fibromyalgia, depression, and anxiety.  (Tr. 1301).  In Dr. Bingemann's view, plaintiff could not engage in full-time, competitive employment on a sustained basis because of her symptoms of anxiety and depression and fibromyalgia-related pain.  (*Id.*).  Plaintiff exhibited "tender spots" and total-body pain, which improved if she could move when needed, but she was generally intolerant to medication "related to sedation."  (*Id.*).  Dr. Bingemann noted that plaintiff had emotional factors that contributed to the severity of her symptoms and functional limitations, such as depression, anxiety, and psychological factors affecting her physical condition, and that she exhibited the following symptoms:

> sleep disturbance; decreased energy; difficulty concentrating or thinking; generalized persistent anxiety; apprehensive expectations; vigilance and scanning; recurrent severe panic attacks manifested by a sudden unpredictable onset of intense apprehension, fear, terror and sense of impending doom occurring on the average of at least once a week; and recurrent and intrusive recollections of a traumatic experience, which were a source of marked distress.

(Tr. 1302).

Dr. Bingemann also opined regarding plaintiff's mental ability to function independently, appropriately, effectively, and on a sustained, consistent, useful, and routine basis, without direct supervision or undue interruptions or distractions, in a regular, competitive work setting for more than six consecutive months.  (Tr. 1302-303).  Specifically, Dr. Bingemann noted that plaintiff was unable to maintain attention for two-hour segments, maintain regular attendance and be punctual within customary, usually strict tolerances, complete a normal workday and workweek without interruptions from psychologically-based symptoms, respond appropriately to changes in a routine work setting, travel to unfamiliar places or use public transportation, or deal with normal work stress.  (*Id.*).  Moreover, in Dr. Bingemann's view, plaintiff could not, for more than twenty percent of an eight-hour workday, remember work procedures, understand and remember detailed instructions, carry out detailed instructions, sustain an ordinary routine without special supervision, work in coordination with or proximity to others without being unduly distracted, make simple work-related decisions, accept instructions and respond appropriately to criticism from supervisors, get along with coworkers or peers without unduly distracting them or exhibiting behavioral extremes, be aware of normal hazards and take appropriate precautions, or set realistic goals or make plans independently of others.  (*Id.*).  Finally, Dr. Bingemann indicated that plaintiff could not, for eleven to twenty percent of an eight-hour workday, understand and remember very short and simple instructions, carry out very short and simple instructions, perform at a consistent pace without an unreasonable number and length of rest periods, ask simple questions or request assistance, and interact appropriately with the general public.  (*Id.*).

In addition, Dr. Bingemann opined as to plaintiff's physical functional abilities in a competitive work situation.  He noted that plaintiff could walk one to two city blocks without

rest or severe pain, could sit for fifteen minutes at one time before needing to get up, stand for

fifteen minutes at one time before needing to sit down or walk around, and could only sit and

stand/walk for two hours each in an eight-hour workday.  (Tr. 1304).  Plaintiff would also

require unscheduled breaks as frequently as every one to two hours for thirty to forty minutes,

during which time plaintiff would have to lie down.  (*Id.*).  Dr. Bingemann indicated that plaintiff

could occasionally lift ten pounds, rarely lift less than ten pounds, and never lift more than ten

pounds, and she could rarely twist, stoop (bend), and crouch/squat, but could never climb ladders

or stairs.  (Tr. 1304-305).  Finally, Dr. Bingemann opined that plaintiff would be off task on

average more than thirty percent of a normal workday/workweek and would be absent from work

on average more than four days per month, all due to her pain and anxiety symptoms.

(Tr. 1305).  Dr. Bingemann found that plaintiff also had trouble sleeping and did not get

adequate sleep, which contributed to her difficulties working at a regular job on a sustained

basis.  (Tr. 1306).

        The ALJ considered this opinion and assigned it "little weight."  (Tr. 509).  In

doing so, the ALJ reasoned that Dr. Bingemann "offered little narrative support" and "little

reference to objective medical findings" for limiting plaintiff to "less than a full range of

sedentary work, with excessive time off task and inability to function in several mental

work-related functional areas."  (*Id.*).  The ALJ generally disagreed with Dr. Bingemann's

opinion regarding plaintiff's mental limitations and concluded that the record was inconsistent

with more than moderate limitations in the functional areas of concentration and adaption and

with more than mild limitations otherwise.  (*Id.*).  The ALJ also found that the "record d[id] not

support Dr. Bingemann's assessed physical limitations," concluding that plaintiff's "[p]hysical

examinations have . . . been largely normal, with only intermittent treatment and conservative management of symptoms." (*Id.*).

Plaintiff contends that the ALJ's handling of Dr. Bingemann's opinion did not comply with the treating physician rule. Specifically, plaintiff points out that the ALJ completely failed to consider the treating relationship between Dr. Bingemann and plaintiff (the first *Burgess* factor), which "left the [ALJ's] decision unsupported by substantial evidence." (Docket # 17-1 at 30). Nor, in plaintiff's view, did the ALJ provide "good reasons" for discounting the opinion. (*Id.* at 30-33). The Commissioner maintains that the ALJ sufficiently explained the reasons that the opinion was not entitled to controlling weight and, even if he did not explicitly consider each *Burgess* factor, a "searching review of the record" nonetheless supports his determination to discount Dr. Bingemann's opinion. (Docket # 20-1 at 20-22 (quoting *Estrella*, 925 F.3d at 95-96)). I agree with the Commissioner.

Unquestionably, the ALJ did not explicitly articulate consideration of each of the *Burgess* factors. Significantly, the ALJ did not acknowledge Dr. Bingemann as a treating source and did not address the frequency of examination and length, nature, and extent of the treating relationship between Dr. Bingemann and plaintiff. In fact, the ALJ's decision contains minimal reference to Dr. Bingemann or his treatment of plaintiff. (*See* Tr. 501, 504, 508).

I agree with the Commissioner that this procedural error is harmless because "a searching review of the record assures [the Court] that the substance of the treating physician rule was not traversed." *Estrella*, 925 F.3d at 96 ("[b]ecause the ALJ procedurally erred, the question becomes whether a searching review of the record assures [the court] that the substance of the rule was not traversed – *i.e.*, whether the record otherwise provides good reasons for assigning little weight to [the treating physician's] opinion") (alterations and quotations omitted).

For the reasons explained below, I find that the ALJ explicitly considered the weight of evidence in the record that supports the opinion, as well as the consistency of the opinion with the record as a whole, and that "the record otherwise provides good reasons for assigning little weight" to Dr. Bingemann's opinion.  *Id.*

   For example, the ALJ accurately observed that Dr. Bingemann "offered little narrative support for [his assessed] limitations and little reference to objective medical findings" (Tr. 509), which is an appropriate reason to discount a medical source opinion.  *See* 20 C.F.R. § 416.927(c)(3) ("[t]he better an explanation a source provides for a medical opinion, the more weight [the Commissioner] will give that medical opinion").  Indeed, aside from Dr. Bingemann's conclusory notations that plaintiff experienced "anxiety [and] depressive symptoms and pain related to [fibromyalgia]," the opinion itself contains little explanation justifying the rather restrictive limitations he assessed.  (*See generally* Tr. 1301-306).  In addition, Dr. Bingemann provided no explanation or medical or clinical findings to support his opined mental restrictions.  (*See* Tr. 1303).

   Moreover, Dr. Bingemann's treatment notes for plaintiff provide scarce objective support for the physical or mental limitations assessed in his medical opinion.  Dr. Bingemann (or someone in his practice) saw plaintiff for appointments multiple times between March 2017 and July 2019.  (*See* Tr. 1148-74, 1445-56).  At plaintiff's first appointment with Dr. Bingemann on March 29, 2017, she indicated that she had been diagnosed with fibromyalgia six years earlier and that she had done "some [physical therapy]" to address it, although she "largely had just dealt with this through the years, walking."  (Tr. 1167).  Plaintiff also stated that she had been in therapy for her depression and anxiety for about twelve years.  (*Id.*).  Dr. Bingemann's examination of plaintiff was normal: she was "[c]omfortable, healthy-appearing," had "[n]o joint

swelling or deformities," and was fully alert and oriented. (Tr. 1171). Thereafter, apart from plaintiff's subjective complaints relating to pain, anxiety, and headaches, Dr. Bingemann's objective examinations of her continued to be generally unremarkable, and Dr. Bingemann's treatment plans appeared inconsistent with the severe limitations detailed in his medical opinion. (*See, e.g.*, Tr. 1165 (April 19, 2017 treatment note: "[n]o distress" on examination); Tr. 1162 (May 17, 2017 treatment note: "[n]o distress" on examination, and noting that plaintiff was handling her fibromyalgia pain better with medication, as she was able to walk and "do[] more and more as weather is breaking"); Tr. 1160 (June 13, 2017 treatment note: "[n]o distress" on examination, but indicating that plaintiff had a "laceration to head" due to a slip and fall incident, and that plaintiff was "[d]oing well with therapy" for her PTSD and no change in medication was needed); Tr. 1157-58 (January 31, 2018 treatment note: "[n]o distress" on examination, but plaintiff reported "constant pain with fibro[myalgia]" and "bad dreams/flashbacks"); Tr. 1153-55 (March 15, 2018 treatment note: plaintiff presented with vaginal bleeding and abdominal pain, but her objective findings were otherwise normal, as she "[q]uickly walk[ed] around room with son, easily moved to exam table" and she demonstrated appropriate psychological findings); Tr. 1148 (April 11, 2019 treatment note: "[n]o distress" on examination where plaintiff presented solely for foot pain, images of which were unremarkable); Tr. 1446-47 (April 24, 2019 treatment note: "[n]o distress" on examination where plaintiff presented for issues relating to her anxiety, and she indicated a "willing[ness] to start with a very low dose of citalopram with the reassurance that she would still be able to care for her kids and be under control and hopefully be even better"); Tr. 1454-55 (July 23, 2019 treatment note: "[n]o distress on examination, and Dr. Bingemann "[r]eassured [plaintiff] [that her headaches] sound[ed] like migraines and may improve as her pregnancy proceeds," noted that plaintiff's recent complaints of light headedness

23

were "[r]elated to less intake and recent heat waves . . . , encouraged [plaintiff to eat] some salty food and eat[] more when [plaintiff was] able and not too nauseated," "[c]ongratulated [plaintiff] on getting [reengaged with therapy,] and encouraged her that she will likely feel better when she is back in therapy and making progress")).  In short, Dr. Bingemann's own treatment notes do not appear to support his opinion that plaintiff's mental and physical impairments would preclude her ability to "engage in full-time competitive employment on a sustained basis." (Tr. 1301).

In addition, the ALJ's decision reflects that he weighed Dr. Bingemann's opinion in view of the record as a whole in concluding that it was not entitled to controlling weight.  The ALJ specifically reasoned that Dr. Bingemann's assessed physical limitations were not justified because plaintiff's "[p]hysical examinations have . . . been largely normal, with only intermittent treatment and conservative management of symptoms."  (Tr. 509).  The ALJ cited notes from the record demonstrating that plaintiff consistently exhibited "normal gait and station without need for assistive devices, and full range of motion of all extremities, with normal strength, sensation, reflexes and coordination."  (Tr. 508 (citing Tr. 383, 406, 440, 467, 1399-1400)).  Although the ALJ recognized that "[s]ome treatment and examination notes have revealed limited range of motion of the spine and/or positive straight leg raise findings" (*id.* (citing Tr. 373, 380, 440)), the ALJ contrasted those findings with the "limited evidence of treatment for back pain [and] few complaints noted prior to her application date" (*id.* (citing Tr. 404-405)).  Moreover, the ALJ noted that plaintiff's diagnostic imaging "has been largely negative, and treatment notes for physical complaints have been relatively sporadic, without indication of significant intervention beyond conservative management of intermittent physical symptoms."  (*Id.*).  Moreover, as the ALJ's decision suggests, Dr. Bingemann's restrictive physical limitations were not consistent

with other medical source opinion evidence, such as the September 20, 2019 consultative internal medicine examination conducted by obstetrician and gynecologist Susan Dantoni ("Dantoni"), MD, which the ALJ afforded "partial weight."  (Tr. 509, 1397-1406).  Unlike Dr. Bingemann, Dr. Dantoni ultimately found that plaintiff "should avoid lifting and carrying more than [twenty pounds] *due to her pregnancy*," but, aside from possible schedule interruptions due to fibromyalgia, "[t]here were *no other limitations* that [could be identified during the] exam." (Tr. 1400 (emphasis supplied)).

Read as a whole, the ALJ's decision also reveals that he accounted for plaintiff's mental health treatment in weighing Dr. Bingemann's opined mental limitations and finding that "the record . . . is not consistent with more than moderate limitation in concentration and adaption, [and] with no more than mild limitations, otherwise."  (Tr. 509).  In reaching that conclusion – and by specifically limiting plaintiff in the RFC to "simple, routine and repetitive tasks, but not at a fast pace, . . . and . . . occasional changes in the work setting" (Tr. 507) – the ALJ balanced plaintiff's "consistent . . . recurrent reports of anxiety" with her reports of functional limitations and her activities of daily living, her consultative examinations, as well as her mental health treatment notes generally showing "intact memory, average intelligence and average fund of knowledge," "cooperative and appropriate behavior," "concentration and attention that was normal, good, and within defined limits," and "thought processes with some perseveration, and fair to good insight, judgment and impulse control."  (Tr. 505-506).  Indeed, although plaintiff points to mental health treatment notes throughout the record that consistently reflect anxious, depressed, or abnormal mood and affect (*see* Docket # 17-1 at 30-31), she fails to acknowledge that the treatment notes otherwise reflect generally unremarkable findings.  (*See*

*generally*, *e.g.*, Tr. 747-872 (treatment notes from Unity Mental Health); Tr. 1190-298 (treatment notes from Strong Behavioral Health)).

Additionally, in formulating the mental portions of the RFC, the ALJ accounted for other medical source opinion evidence assessing less restrictive limitations than those assessed by Bingemann.  For instance, the ALJ gave "some" or "partial" weight to the opinions of state examining consultants Dante Alexander, Psy. D., and Christine Ransom, Ph.D.  (Tr. 509, 511).  Alexander, who conducted a psychiatric evaluation of plaintiff, assessed that although plaintiff demonstrated mild impairments in attention, concentration, and memory, she had only mild limitations in sustaining concentration and performing at a consistent pace, as well as mild limitations regulating her emotions, controlling her behavior and maintaining her well-being. (Tr. 1366-69).  According to Alexander, plaintiff had no evidence of other work-related mental limitations.  (*Id.*).  Similarly, Ransom, who administered intelligence testing to plaintiff, assessed that, despite some low-average testing results, plaintiff demonstrated no evidence of work-related mental limitations.  (Tr. 428-31).

In sum, I am satisfied that "a searching review of the record assures [the court] that the substance of the treating physician rule was not traversed" in assigning "little weight" to Dr. Bingemann's opinion.  *Estrella*, 925 F.3d at 96.  A longitudinal review of plaintiff's medical record supports the ALJ's conclusion that the restrictive limitations contained in that opinion – including some which would be work preclusive – were not supported by the record evidence. Accordingly, I find that any error in not explaining his reasoning more fully or explicitly addressing each *Burgess* factor was harmless and does not necessitate remand.  *See*, *e.g.*, *Bachety v. Comm'r of Soc. Sec.*, 2021 WL 371583, *4 (E.D.N.Y. 2021) ("[the court] would have preferred, and the regulation requires, more elucidation from the ALJ on why she discounted the

entirety of [treating physician's] opinion[;] [h]owever, on this record, I am confident that a remand would not result in a different conclusion on [RFC] or disability[;] [a]lthough the ALJ failed to explicitly consider the factors underlying the treating physician rule, my review of the record assures me that there were good reasons for assigning little weight to [treating physician's] opinion, and thus the procedural error was harmless"); *Jedermann v. Comm'r of Soc. Sec.*, 2020 WL 5361665, *5 (W.D.N.Y. 2020) ("[i]n the present case, the ALJ committed procedural error when she did not explicitly apply the *Burgess* factors while assigning weight to [treating physician's] opinion[;] [h]owever, after an independent, 'searching review' of the record as a whole, including both the ALJ's decision, and [treating physician's] opinion, the [c]ourt finds that the substance of the treating physician rule was not traversed in this case[;] [t]he ALJ's otherwise thorough opinion allows this court to conclude that the ALJ's error was harmless, and her weigh[ing] of [treating physician's] opinion was based on substantial evidence"); *Fisher v. Comm'r of Soc. Sec.*, 2020 WL 5757188, *7 (W.D.N.Y. 2020) ("[b]ecause the ALJ did not explicitly acknowledge the 'treating physician rule' or explicitly utilize the *Burgess* factors to explain why [treating physician's] opinions were not entitled to controlling weight, the [c]ourt finds that the ALJ committed procedural error[;] [t]herefore, the [c]ourt has conducted 'a searching review of the record to assure [that [p]laintiff] received the rule's procedural advantages[]'[;] [t]his searching review has satisfied the [c]ourt that [treating physician's] opinions were not well-supported by clinical findings and w[ere] contradicted by substantial evidence in the record") (citations omitted).

## CONCLUSION

After a careful review of the entire record, this Court finds that the Commissioner's denial of SSI was based on substantial evidence and was not erroneous as a matter of law.  Accordingly, the ALJ's decision is affirmed.  For the reasons stated above, the Commissioner's motion for judgment on the pleadings **(Docket # 20)** is **GRANTED**.  Plaintiff's motion for judgment on the pleadings **(Docket # 17)** is **DENIED**, and plaintiff's complaint (Docket # 1) is dismissed with prejudice.

**IT IS SO ORDERED.**

_s/Marian W. Payson_

MARIAN W. PAYSON
United States Magistrate Judge

Dated: Rochester, New York
　　　July 7, 2022